UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

DAVID HARRIS, )
 )
      Plaintiff, )
 )
v. ) No. 4:14-CV-0046
 ) Phillips/Lee
TD AMERITRADE, INC., )
 )
      Defendant. )

## MEMORANDUM OPINION

Defendant TD Ameritrade, Inc. ("TDA") has moved to dismiss the plaintiff's complaint, or alternatively, to compel arbitration [Doc. 4]. Plaintiff David Harris, acting *pro se*, opposes both requests and this motion has been thoroughly briefed by both parties [Docs. 5, 7, 8, 12, 14, 21]. Thus, this matter is ripe for determination.

After careful consideration of the pending motion and all the relevant pleadings, the defendant's motion [Doc. 4] will be **GRANTED in part** and **DENIED in part**.

**I.    Relevant Facts**[1]

As set forth in plaintiff's complaint [Doc. 1-3], which is entitled "Statement of Claim," this case arises from the plaintiff's purchase of certain shares of stock through a brokerage agreement with TDA. On August 24, 2005, plaintiff purchased 48,000 shares

---

[1] For the purposes of a motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

of Bancorp International Group, Inc. ("BCIT") in a TDA account [*Id*. at p. 2]. TDA removed funds from plaintiff's account to pay for the shares and sent plaintiff a trade confirmation of the purchase [*Id*.]. On December 12, 2006, plaintiff transferred 3,000 of those shares to his parents' account, leaving 45,000 shares in his account [*Id*.].

On December 12, 2011, plaintiff made a demand to TDA to transfer his BCIT shares into his name on the books of BCIT and to deliver a certificate [*Id.*]. TDA refused to do so and advised plaintiff that they were unable to comply with his request because of a previously issued "global lock" on BCIT stock issued by the Depository Trust Clearing Corporation ("DTC") [*Id*. at pp. 2—3, 4]. The "global lock" was issued on August 16, 2005, "halting all transactions other than custody services through the DTC." [*Id*. at p. 4.]

Plaintiff contends that TDA's refusal to transfer is not because of the global lock, but because TDA does not in fact own any BCIT shares or sufficient BCIT shares and therefore TDA has "traded illegally and fraudulently." [*Id*.] Plaintiff claims that TDA has violated its obligations under Uniform Commercial Code ("U.C.C.") § 8-508 [*Id*. at p. 6]. Plaintiff also alleges that TDA engaged in fraudulent misrepresentation as to the number of shares they hold at DTC [*Id*. at p. 7].

Plaintiff Harris initiated this case against defendant in the Circuit Court of Coffee County, Tennessee, case number 41279, on June 5, 2014 [Doc. 1-3]. TDA timely removed the case to this Court on the grounds of diversity jurisdiction as plaintiff is a Tennessee resident and TDA is a New York corporation with its principal place of business in Omaha, Nebraska [Doc. 1 at ¶ 4].

2

## II. Motion to Dismiss or Compel Arbitration

TDA moves to dismiss the complaint on several grounds or, alternatively, to refer the plaintiff's claims to arbitration. In light of the following discussion concerning the request to compel arbitration and the mandatory application of the Federal Arbitration Act, the Court finds it unnecessary to address TDA's arguments in support of dismissal.

The application that plaintiff completed to open an account with TDA contains an agreement that the account will be governed by certain "Terms and Conditions" and that those "Terms and Conditions" contain "predispute arbitration clauses."[2] [Doc. 5-1 at p. 3.] The Arbitration Disclosure and Agreement contained in the "Terms and Conditions" is as follows:

> **99. The following arbitration provision will apply to any controversy or claim that arises between me and Ameritrade:**
> **a) Arbitration is final and binding on the parties.**
> **b) The parties are waiving their right to seek remedies in court, including the right to jury trial.**
> **c) Pre-arbitration discovery is generally more limited than and different from court proceedings.**
> **d) The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal to seek modification of rulings by the arbitrators is strictly limited.**
> **e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**
> **f) No person shall bring a putative or certified class action to arbitration nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied, or (ii) the class is decertified,**

---
[2]The Court notes that the "Terms and Conditions" provide that any court action "shall be governed by the laws of the State of Nebraska." [Doc. 5-2 at p. 3, ¶ 33.]

3

> or (iii) the client is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.
> **100. All controversies concerning (a) any transaction, (b) the construction, performance or breach of this or any other agreement, whether entered into prior to, on or after the date of this Agreement, or (c) any other matter which may arise between Ameritrade and me shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc.**

[Doc. 5-2 at p. 8 (emphasis in original).] Based on this broad language, TDA argues that plaintiff has agreed to pursue any claims he may have against TDA through arbitration. Thus, TDA moves to compel arbitration in the absence of dismissal [Doc. 5 at pp. 14—16].

Plaintiff does not dispute that the account application and the "Terms and Conditions" set forth the parameters of the parties' agreement. Plaintiff acknowledges that the parties' agreement contains an arbitration clause, but suggests that the arbitration clause is invalid because no other BCIT customer has been successful in arbitrating their claims. Thus, plaintiff concludes that the protection of his rights is outside the scope of the arbitrator's authority [Doc. 7 at pp. 7—8]. Plaintiff also argues that arbitration would serve no purpose and that it is not the sole and exclusive remedy available to the parties [*Id.* at p. 14].

In response, TDA argues that the Court's analysis is limited to whether the agreement to arbitrate encompasses the dispute at issue and that statutory claims can be arbitrated [Doc. 8 at p. 6]. TDA notes that there is no prohibition against arbitration in the U.C.C. as adopted in either Nebraska or Tennessee and the parties have expressly

4

agreed to arbitrate any claims between them [*Id.* at p. 7]. Further, TDA argues that arbitration provisions are enforceable even if the cost may effectively prohibit bringing statutory claims [*Id.* at pp. 7—8 (citing *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013))].

In a surreply, plaintiff contends that arbitration does not provide him with due process of law and there is no meaningful appellate review [Doc. 12 at p. 2]. Plaintiff contends that the brokerage agreement is a contract of adhesion and is unconscionable [*Id.* at pp. 3—4]. Finally, plaintiff argues that the law does not require him to do a useless thing and it would serve no purpose for him to submit his claims to arbitration [*Id.* at pp. 8—9]. In response, TDA notes that the arbitration agreement in this case is a standard provision in the securities industry and that TDA is not free to change most of the language [Doc. 14 at pp. 3—4].

As an initial matter, the Court notes that because a motion to dismiss pursuant to Rule 12(b)(6) tests the "sufficiency of the plaintiff's claim for relief," the Court "may consider only matters properly part of the complaint or pleadings" in deciding the merits of the motion. *Armengau v. Cline,* 7 F. App'x 336, 344 (6th Cir. 2001) (citations omitted). *See also* Fed. R. Civ. P. 12(d). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Sixth Circuit "takes a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." *Armengau,* 7 F. App'x at 344. "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Id.* (citation omitted). Although the

5

parties' agreement is not specifically referred to in the complaint, plaintiff directly references his account with TDA and he does not dispute that the "Terms and Conditions," including the arbitration provision, are applicable to his account. Thus, because the parties' agreement, including the agreement to arbitrate, is central to plaintiff's claims, the Court finds that it can consider the agreement in resolving the motion to dismiss or compel arbitration under Rule 12(b)(6).

The Federal Arbitration Act (the "FAA")[3], 9 U.S.C. §§ 2, *et seq.*, "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 595 (6th Cir. 1995) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). It mandates that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The provisions of the FAA are mandatory. *See* 9 U.S.C. §§ 3–4. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3–4).

When a party asks a federal court to compel arbitration of a dispute, the court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D.*

---

[3]Although the parties' agreement states that it is governed by Nebraska law, arbitration arising from a contract involving interstate commerce, as here, is governed by the FAA. *Aramark Uniform & Career Apparel, Inc. v. Hunan, Inc.*, 757 N.W.2d 205, 209 (Neb. 2008).

6

*Byrider,* 228 F.3d 709, 714 (6th Cir. 2000). Because arbitration is a matter of contract, a party cannot be required to submit to arbitration a dispute it did not agree to arbitrate. *AT & T Techs., Inc. v. Communication Workers of Am.,* 475 U.S. 643, 648–49 (1986). When a contract contains an arbitration clause, however, doubts regarding the scope of the clause should be resolved in favor of submitting a particular dispute to arbitration. *Id.* at 650; *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25; *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 675 (6th Cir. 2003).

In determining whether parties agreed to arbitrate a particular dispute, a court must conduct a two-part inquiry. *Pippenger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 1:09–cv–167, 2009 WL 2244613, at *2 (E.D. Tenn. July 29, 2009) (citation omitted). The court must first evaluate whether a valid agreement to arbitrate exists between the parties and, second, whether the specific dispute at issue falls within the substantive scope of that agreement. *Watson Wyatt & Co. v. SBC Holdings, Inc.,* 513 F.3d 646, 649 (6th Cir. 2008). Plaintiff does not dispute that the parties' agreement contains a pre-dispute arbitration clause [*see* Doc. 7 at p. 7 "[o]ur agreement includes a pre-dispute arbitration clause"], but contests whether his claims are covered by the arbitration clause and whether the clause is enforceable.

The arbitration agreement is broadly written to "apply to *any* controversy or claim that arises between [plaintiff] and Ameritrade." [Doc. 5-2 at p. 8 (emphasis added).] Further, the arbitration agreement provides that "[a]ll controversies concerning (a) any transaction, (b) the construction, performance or breach of this or any other agreement . . . or (c) any other matter which may arise between Ameritrade and me shall be determined

7

by arbitration." [*Id.*] The Sixth Circuit has held that broadly written arbitration clauses, such as the instant one, must be taken at their word and extend to situations that fall within their purview. *Watson Wyatt & Co.*, 513 F.3d at 650. Moreover, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Id.* (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003)). Finding no such provision that would exclude plaintiff's claims from the parties' arbitration agreement, the Court concludes that this dispute, arising from transactions and other matters between the parties is encompassed by the arbitration agreement.

Plaintiff argues that the arbitration clause is unconscionable and should not be enforced because no other plaintiffs have been successful in arbitrating similar claims. This argument, however, conflicts with the federal policy favoring arbitration and the decisions of the United States Supreme Court and Nebraska courts applying the FAA. Under Nebraska law, "the term 'unconscionable' means manifestly unfair or inequitable." *Myers v. Neb. Inv. Council*, 724 N.W.2d 776, 799 (Neb. 2006). Further, "[a] contract is not substantively unconscionable unless the terms are grossly unfair under the circumstances that existed when the parties entered into the contract." *Id.* Nebraska courts also consider whether a contract is "procedurally unconscionable," an essential element of which includes "the disparity in respective bargaining positions of parties to a contract." *Id.* Although plaintiff signed a standard account application which incorporated standard "Terms and Conditions," "adhesion contracts are not automatically

8

unconscionable or void" under Nebraska law. *Kosmicki v. Nebraska*, 652 N.W.2d 883, 898 (Neb. 2002). Plaintiff does not point to any particular language or provision of the agreement which is unfair or inequitable; rather, he focuses on the lack of success that other plaintiffs have had in arbitrating similar claims. However, simply because other plaintiffs have been unsuccessful in arbitrating similar claims with TDA does not mean that the arbitration agreement is unconscionable or ineffective. To invalidate an arbitration agreement based on speculation would undermine the "liberal policy favoring arbitration agreements." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Thus, the Court cannot conclude that the arbitration agreement is unconscionable or that it would preclude the vindication of plaintiff's rights.

Finally, the Court must consider whether to stay the case pending arbitration or to dismiss it, as TDA urges. A court may dismiss rather than stay a case when all issues raised in the complaint are arbitrable. The United States Court of Appeals for the Sixth Circuit has stated that "'[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.'" *Green v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992)); *Hensel v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999); *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Gassner v. Jay Wolfe Toyota,* No. 4:06–CV–1335 CAS, 2007 WL 1452240, at *4 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be

9

submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action."). Because all of plaintiff's claims are arbitrable, the Court can find no reason to stay this matter pending arbitration. Further, dismissal does not impair either party's ability to seek post-arbitration relief to obtain judicial review of any arbitration award.

### III.   Conclusion

For all the reasons set forth above, the defendant's motion to dismiss, or alternatively, to compel arbitration [Doc. 4] will be **GRANTED in part** and **DENIED in part**. The parties will be **ORDERED** to arbitrate the claims raised in plaintiff's complaint pursuant to the terms of the parties' arbitration agreement. This case will be **DISMISSED without prejudice**. An appropriate order will be entered.

                                            s/ Thomas W. Phillips
                                 SENIOR UNITED STATES DISTRICT JUDGE